IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>KYMBERLI LAMBERT,<br><br>Defendant. | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER ON MOTION TO SUPPRESS<br><br><br>Case No: 2:07CR925DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on Defendant Kymberli Lambert's Motion to Suppress Evidence. The court held an evidentiary hearing on the motion to suppress on March 6, 2007, and closing arguments on April 14, 2008. At the hearings, Defendant appeared and was represented by L. Clark Donaldson, and Plaintiff was represented by Eric G. Benson and Carol A. Dain. The court has carefully considered the evidence presented at the hearing, the memoranda and other materials submitted by the parties, and the law and facts relating to this motion. Now being fully advised, the court renders the following Findings of Fact, Conclusions of Law, and Order.

**FINDINGS OF FACTS**

On December 5, 2007, at approximately 10:28 p.m., Officer Devin Fredrickson Stutz ("Stutz") and Officer Neil Carson ("Carson"), patrol officers with the Salt Lake City Police Department, were dispatched to a motel to investigate a complaint of a person trying to sell a computer and a firearm. The officers arrived at the Allstar Motel and went to the desk to inquire if a person named Shelby was registered. The officers were informed that Shelby Remington was registered in room 164. The lights to room 164 were out when officers knocked on the door.

The defendant answered the door wearing only a bathrobe and identified herself as Shelby Remington. Stutz and Carson were unfamiliar with the defendant and had never dealt with her before. Defendant and the officers spoke to Defendant outside. The officers were dressed in uniform with their handguns holstered at their sides. Neither officers ever physically touched Defendant. The conversation was normal investigative conversation. The officers never raised their voices or got within Defendant's personal space.

The officers stood outside the door conversing with Defendant for 10 to 15 minutes. Stutz admitted that the officers' "goal" was to get inside the motel room and search for the weapon. But according to Stutz, they did not ask to enter the room. Although Stutz's report stated that Defendant "would not let us into her room but did speak to us freely just outside the door," Stutz denied that this language implied that he or Carson had asked if they could enter the room. Stutz testified that, initially, Defendant did not invite them inside the room.

However, it was late at night and cold outside. Stutz and Carson were fully clothed and in winter jackets, and Defendant was wearing only a bathrobe. Defendant told the officers that she was cold and wanted to go inside. Stutz's report states that Defendant "allowed" the officers to come inside the room because "it had become cold" and he testified that Defendant asked the officers to come inside because it was cold. The officers did not tell Defendant that she did not have to let them into the room or that she could require them to get a search warrant. Defendant, however, also did not ask the officers if they could do this another time or ask them to leave.

The officers entered her motel room and continued interviewing Defendant. The officers testified that Defendant did not appear to be under the influence of alcohol or drugs and that she appeared to understand their questions. The officers told Defendant that they did not think her name was really Shelby Remington. Defendant told the officers that she did not have any form

2

of identification because it had been stolen and that she did not know her social security number. The officers also told Defendant that there were allegations that she was fleeing from some criminal charges, but Defendant said she was not. Shelby was the name given to the police by the complaining witness and the same name under which Defendant was listed on the motel registry. Sometime later, Defendant provided officers with a birth certificate of Shelby Remington that corresponded to the date of birth she had given the officers. Stutz found it strange that Defendant would not have reported her identification stolen and had not memorized her social security number.

During the interview, Defendant also denied that she had a cell phone. Stutz found it odd that she said she had no cell phone because the complaining witness gave them a cell phone number for the individual attempting to sell the firearm. Stutz had previously called the cell phone number they had been given by the complainant and believed that the voice on the announcement was the same as Defendant's. After they questioned Defendant about this, she indicated that she had a cell phone and had forgotten she had it with her. At this point of the interview, Stutz testified that Defendant appeared to be annoyed with the officers.

Because Defendant was dressed only in a bathrobe when officers arrived, Carson told her to get dressed." Stutz told Defendant to get dressed in the bathroom and put some clothes on. Carson did a protective "sweep" of the bathroom for weapons prior to allowing Defendant to enter. Defendant entered the bathroom and began dressing without first closing the door. The officers told her several times to close the door while she dressed, and she eventually did.

Defendant asked officers if she could smoke her cigarettes in the motel room and they told her that she could not. Stutz shone his police light into the defendant's partially open purse which was on the floor between the beds to attempt to view the contents.

3

Stutz and Carson contacted Sergeant Randy Bushman ("Bushman") because they were feeling uncomfortable. Bushman arrived 5 to 10 minutes later. When Bushman arrived, Stutz went to his car to run a check on the name "Shelby Remington" with Idaho authorities. He learned that there was no record of a person in the state of Idaho with that name. Stutz called a person who was identified as owning the license place on the vehicle outside Defendant's motel room. The person indicated that she had sold the car to a person named Shelby Remington.

Bushman testified that at the time he arrived at the motel room, Defendant's demeanor was pleasant and civil. At some point while Stutz was conversing with the Idaho authorities, Bushman asked Defendant about the firearm and laptop that had been reported as having been offered for sale, and Defendant denied having those items. According to Bushman, Defendant told him that he could check the room for them. Bushman made sure she consented to his check and he asked her to show him around the room. Defendant took Bushman back into an antechamber bedroom that contained luggage and she opened her baggage. As Defendant was going through her bags, Bushman saw what he could identify as a brown pistol pouch in one of the bags. Bushman told Defendant not to touch the pouch or open the suitcase again. He told her about what he had seen, and she admitted it was a firearm. Bushman recovered the firearm from the suitcase and gave it to one of the other officers.

Bushman testified that he did not arrest Defendant at that time because he did not know if she was unlawfully possessing the firearm. Defendant expressed that she was concerned with being in possession of the weapon. Defendant remained calm during this exchange.

Bushman was still concerned with Defendant's identity so he called a crime lab technician Melanie Schertz ("Schertz") to come to the scene and fingerprint and photograph Defendant. Defendant cooperated with the fingerprinting and Schertz ran her prints through a

4

computer database and determined that Defendant's true identity was Kymberli Lambert. The computer check also revealed several in state and out-of-state warrants for Defendant's arrest. When her identity became known, Defendant became belligerent, raised her voice, and accused the officers of heinous things. The officers handcuffed Defendant and took her to jail.

## CONCLUSIONS OF LAW

Defendant argues that the officers' search of her motel room was unlawful because she did not voluntarily consent to their entry of the room or to their search. The Fourth Amendment protects individuals from "unreasonable searches and seizures." U.S. Const. Amend. IV.

**A.  Consent to Enter Room**

Where police act without a warrant, as in this case, the burden is on the prosecution to establish that the search was constitutional. *United States v. Esser*, 451 F.3d 1109 (10th Cir. 2006). Although the Fourth Amendment generally requires a search warrant to search a person's home, "it is well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *United States v. Pena*, 143 F.3d 1363, 1365-66 (10th Cir. 1998). While this case involves a motel room instead of a home, overnight guests and joint occupants of motel rooms possess reasonable expectations of privacy in the property in which they are staying. *United States v. Kimoana*, 383 F.3d 1215, 1221 (10th Cir. 2004). Consent to entry is valid only if it is freely and voluntarily given. *United States v. Cruz-Mendez*, 467 F.3d 1260 (10th Cir. 2006).

"In cases challenging a warrantless entry leading to an arrest, the burden is on the government to (1) "present clear and positive testimony that consent was unequivocal and specific and freely and intelligently given"; and (2) "show that the police did not coerce the defendant into granting [her] consent ." *United States v. Gonzales,* 252 Fed.Appx. 900 (10th Cir.

2007) (citations omitted).  Mere acquiescence to police intrusion is not sufficient to constitute consent. *Bumper v. North Carolina,* 391 U.S.543, 546-547 (1968); *Johnson v. United States*, 333 U.S. 10 (1948).  Whether Defendant's consent to enter and search her motel room was in fact "voluntary" is a question of fact to be determined from the totality of all the circumstances. *Pena*, 143 F.3d at 1366.

"There is no talismanic definition of 'voluntariness' readily applicable to the myriad situations in which the police find it efficient to ask permission to conduct a consensual search." *Id.* 412 U.S. at 222 (quoting *Katz*, *v. United States*, 389 U.S. 347, 357 (1967)).  In each case, the reviewing court must make a factual determination that under the circumstances, consent was "'the product of an essentially free and unconstrained choice,'" *Id.* at 225 (citations omitted), or, alternatively, whether the defendant's " 'will [was] overborne and his capacity for self-determination critically impaired,' " so as to render his consent not truly voluntary. *Id.*

In determining whether Defendant's consent was voluntary, courts should consider, among other things, "physical mistreatment, use of violence, threats, threats of violence, promises or inducements, deception or trickery, and the physical and mental condition and capacity of the defendant within the totality of the circumstances."  *United States v. McCurdy*, 40 F.3d 1111, 1119 (10th Cir. 1994).  In *Schneckloth v. Bustamonte*, the Supreme Court also identified factors to be considered such as: the age of the person, their education level and intelligence, their mental and physical condition at the time, whether he or she is under arrest, the length and nature of other interrogation, and whether he or she has been advised of his rights to refuse consent.  412 U.S. 218, 226 (1973).

The court finds no problems with Officer Stutz's credibility.  Defendant takes issue with wording differences between the officer's report and his testimony.  In addition, on direct

examination, Stutz stated that Defendant asked them to come inside, but on cross examination, when defense counsel asked, "how did that occur?" Stutz responded that "she was cold and wanted to go inside." Defendant fails to recognize that Stutz' answer that Defendant wanted to go inside was only an explanation for why she had invited them into the room. The court does not believe that the slight discrepancies in language reflect on the officer's credibility. Stutz consistently stated on both direct and cross examination that Defendant asked them to come inside.

Defendant had been freely speaking with the officers, the tenor of the encounter was conversational, the officer never asked to go inside, and Defendant never asked the officers to leave. There is nothing in the record to suggest that the situation was coercive. Although it was cold outside and late at night, Defendant did not ask if the interview could be done at another time. And, regardless of whether it was Stutz's "goal" to get inside the room and search for the weapon, there is nothing to suggest that the officers coerced Defendant. She could have stated that she needed to put a coat on or change clothes. Instead, she asked the officers to come inside. Under the totality of the circumstances, the court concludes that Defendant knew what she was doing when she asked the officers to come inside. Defendant's invitation to officers to enter the motel room was unequivocal, specific, and freely given without coercion or duress and, therefore, was voluntarily given.

## B. Consent to Search Room

Defendant argues that even if the court believes that she consented to the officer's entry into her room, the Government has not met its burden to establish that Defendant consented to a search of her room and luggage. Before the Court may admit evidence obtained as a result of a consent search it must determine "from the totality of the circumstances that 1) the defendant's

consent was voluntary, and 2) the search did not exceed the scope of the consent." *United States v. Sims*, 428 F.3d 945, 952 (10th Cir. 2005).

**1. Valid Consent**

The Tenth Circuit has established a two-prong test for proving "valid consent to a warrantless search." *Pena*, 143 F.3d at 1366. Under the first prong, the government must present "clear and positive testimony that consent was unequivocal and specific and freely and intelligently given." *Id.* Under the second prong, "the government must show that the police did not coerce the defendant into granting his consent." *Id.*

To determine "whether a consent to search was free from coercion, 'a court should consider, *inter alia*, physical mistreatment, use of violence, threats, threats of violence, promises or inducements, deception or trickery, and the physical and mental capacity of the defendant within the totality of the circumstances." *Id.* at 1367. The court in *Pena* determined that the defendants use of the phrase "go ahead" was unequivocal and specific consent. In this case, when Bushman asked if Defendant had firearms and laptops, Defendant told Bushman "you can check." Bushman testified that he then made sure that Defendant consented to the search and Defendant volunteered to show the officers around.

Defendant argues the officers had been questioning Defendant for a prolonged period of time. The officers had been in the room for 45 minutes to an hour before Bushman arrived. During that time, however, Defendant had been asked to change clothes and the officers had done a protective sweep of the bathroom area. The amount of time questioning was not so long as to be coercive. The officers testified that Defendant's demeanor was still pleasant and civil. There is no evidence that Defendant was touched or threatened in any way. The court, therefore, concludes that under the totality of the circumstances Defendant's consent was unequivocal,

specific, and freely given.

### 2. Scope of the Consent

Next, the court must determine whether the search exceeded the scope of the consent. "The standard for measuring the scope of an individual's consent to search is that of 'objective reasonableness,' asking what the typical reasonable person would have understood to be the scope of his or her consent under the circumstances." *Pena*, 143 F.3d at 1367-68.

In this case, Defendant allowed the officers to check the room for laptops and guns. "Consent to search for specific items includes consent to search those areas or containers that might reasonably contain those items." *United States v. Kimoana*, 383 F.3d 1215, 1223 (10th Cir. 2004). Defendant then volunteered to show the officers around the room. Bushman noticed the pistol pouch while Defendant had a piece of her luggage opened. Although Defendant attempted to limit Bushman's view of the inside of the luggage, she did not place any limitations on the search. Bushman saw something suspicious, asked Defendant what it was, and Defendant answered truthfully. The court does not believe there is basis for asserting that Bushman's response to seeing the pistol pouch exceed the scope of Defendant's consent to search. Defendant, herself, had opened the piece of luggage. Accordingly, the court finds no basis for suppressing the evidence based on the search of Defendant's motel room.

### ORDER

Based on the above reasoning, Defendant's Motion to Suppress is DENIED.

DATED this 24th day of April, 2008.

_____
Dale A. Kimball,
United States District Judge